## BALFOUR FEDERAL CREDIT UNION

v.

## Bedos BEDROSIAN d/b/a Pete's Trailer Park et al.

### No. 88–487–Appeal.

Supreme Court of Rhode Island.

March 6, 1990.

John J. Lanni, Frederic A. Marzilli, Marzilli & Lanni, East Providence, for plaintiff.

John W. Ranucci, Herbert F. DeSimone, Jr., DeSimone & Leach, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This is an appeal from a Superior Court order in which a trial justice found the purchase-money security interest that the plaintiff, Balfour Federal Credit Union (Balfour), held in a mobile home was superior to the interests claimed by the defendant Bedros Bedrosian (Bedrosian). The facts of the controversy are as follows.

In early December of 1987 Balfour filed a complaint in the Superior Court against Bedrosian. Balfour alleged that it had a purchase-money security interest in a mobile home and that Bedrosian had wrongfully retained possession of it. Balfour sought a writ of replevin under Rule 64 of the Superior Court Rules of Civil Procedure and G.L.1956 (1984 Reenactment) § 34–21–1. In March of 1988 a third party, Anniello V. Calise, doing business as Danny's Auction Barn, was allowed to intervene as a defendant.

Following the filing of various motions for summary judgment, the trial justice decided to consider the entire action as one for declaratory judgment. During the hearing the travel of the mobile home was revealed.

It appears that in June of 1985 Balfour entered into a promissory note with the purchaser of the mobile home. Later that month Balfour recorded the financing statement, thereby obtaining a perfected purchase-money security interest in the mobile home. Thirteen months later the purchaser defaulted on the note.

On August 15, 1986, Bedrosian, the landlord of a trailer park in which the mobile home was located, brought a trespass-and-eviction action against the purchaser of the mobile home. On September 10, 1986, pursuant to a judgment execution, Bedrosian had the mobile home removed from his property and taken to Danny's Auction Barn for storage. The mobile home has remained immobile at that location since September of 1986.

In September of 1988 the trial justice entered an order in which he found (1) the interest of Danny's Auction Barn was entitled to priority over the interests of the other two parties, pursuant to G.L.1956 (1985 Reenactment) § 6A–9–310, and (2) Balfour's purchase-money security interest was superior to Bedrosian's subsequent trespass-and-ejectment execution. Bedrosian now appeals from that order.[1]

Bedrosian argues that the trial justice erred in not distinguishing his two distinct

---

1. There is no question about the ultimate superiority of the interest of Danny's Auction Barn. Bedrosian conceded this fact at the hearing, and Balfour has not filed a notice of appeal from the order and is thereby foreclosed from raising the issue in this appeal.

interests.[2] He bases his claim for moving and storage costs on G.L.1956 (1984 Reenactment) § 34–18–50, as amended by P.L. 1986, ch. 200, § 2, which, he contends, "creates an enforceable statutory interest in favor of the landlord." This interest takes precedence over Balfour's interest, he argues, because although Balfour's interest is given priority under the Uniform Commercial Code (UCC), §§ 6A–9–201 and 6A–9–312, the UCC provisions do not apply to a landlord's lien. Bedrosian further argues that principles of equity militate in favor of the superiority of his interests over those of Balfour. Balfour asserts that whether the UCC provisions or common law applies, its perfected purchase-money security interest is still superior to Bedrosian's interest.

 Specifically Bedrosian contends that he has either a lien or security interest for the moving and storage costs pursuant to §§ 34–18–42 and 34–18–50. Bedrosian's reliance upon these sections is in error. Sections 34–18–42 and 34–18–50 are found in G.L.1956 (1984 Reenactment) chapter 18 of title 34, entitled "Residential Landlord and Tenant Act." This chapter took effect on January 1, 1987, and it applies to rental agreements entered into or extended or renewed on and after that date. The trespass-and-ejectment action resulted in a judgment in favor of Bedrosian on August 15, 1986. Then on September 10, 1986, pursuant to that judgment, Bedrosian had the mobile home removed to Danny's Auction Barn. The Residential Landlord and Tenant Act was not in effect at that time. The version of chapter 18 that was in effect

at the time Bedrosian took this action contained § 34–18–9.1 entitled "Payment of moving costs for tenant's removed property required." [3] Although we are of the opinion that § 34–18–9.1 does create a statutory interest in favor of a landlord, the statute does not create a landlord's lien. The interest arises, as the statute indicates, only after the property has been removed by mandate of an execution. The landlord then has the right to collect the entire amount of the cost of moving the personal property and any prepaid storage charges. The statute does not, however, give rise to a landlord's lien.

In the case at bar the landlord, Bedrosian, removed the property from his premises following the issuance of a trespass-and-ejectment execution. We do not dispute Bedrosian's right under § 34–18–9.1 to collect the costs of moving the property. However, that interest is, of course, subject to any interest that may be superior. Because § 34–18–9.1 does not create a lien on behalf of Bedrosian, he then occupies the same position as any other creditor under the Uniform Commercial Code. Section 6A–9–201, entitled "General validity of security agreement," states in pertinent part, "Except as otherwise provided by this title a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." Section 6A–9–312, entitled "Priorities among conflicting security interests in the same collateral," states in pertinent part, "A purchase money security interest in collateral other than inventory has priority over a conflicting security in-

---

**2.** Bedrosian now asserts in his brief that he has abandoned the first part of his claim based on back rent. He is now proceeding solely on his claim for the moving and storage costs he incurred in removing the mobile home and transporting it to Danny's Auction Barn.

**3.** General Laws 1956 (1984 Reenactment) § 34–18–9.1 states:

"Whenever the personal property of any tenant is removed from the premises the tenant occupies by mandate of an execution from the court of competent jurisdiction, the tenant shall pay the entire amount of the cost of moving such personal property and any prepaid storage charges to the sheriff, constable,

or other person who lawfully caused the personal property to be so moved before the personal property can be released to the tenant by the person, firm, partnership, company, association or corporation having lawful possession thereof. Further, the sheriff, constable or other person who lawfully caused the personal property to be so moved shall prepare and deliver a release in writing stating that the costs of moving and any prepaid storage charges have been paid in full and authorizing the release of the personal property to the tenant. This amount shall be paid to the landlord as reimbursement for the costs of removing the personal property."

terest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten (10) days thereafter."

It is evident from the record that Balfour obtained and perfected a purchase-money security interest in the mobile home prior to the creation of any interest in favor of Bedrosian. It is equally evident, pursuant to the above-referenced statutes, that this perfected purchase-money security interest is superior to any interest claimed by Bedrosian. The trial justice so found, and we find no error in that determination.

 Furthermore, Bedrosian's contentions in regard to the creation of an equitable lien are also without merit. Bedrosian has not cited any authority for this contention in his brief to this court, and we are unaware of any such precedent that would encourage such a finding in these circumstances.

Lastly Bedrosian contends that if this court were to find his interest arising under § 34–18–50 subordinate to a perfected purchase-money security interest, landlords would be forced to sort those items on which a security interest has been perfected from those unfettered by such an interest prior to removing any property. As we have stated earlier, § 34–18–50 does not apply to the present action. However, this court is cognizant of the general concerns expressed by Bedrosian. Nevertheless, any change in the statutory scheme rests solely within the powers of our General Assembly.[4]

We therefore conclude that Bedrosian does not possess a landlord's lien as a result of his actions pursuant to § 34–18–9.1. Consequently, this priority

battle is decided pursuant to §§ 6A–9–201 and 6A–9–312. In light of those statutes, Balfour's perfected purchase-money security interest is given priority over the interest that Bedrosian asserts.

For the reasons stated, the defendant's appeal is denied and dismissed and the judgment appealed from is affirmed.

---

4. With regard to mobile homes, the General Assembly has enacted G.L.1956 (1982 Reenactment) § 31–44–4, as amended by P.L.1987, ch. 116, § 1, which states in pertinent part:

"(i) Every person who sells a mobile and/or manufactured home in this state which will be located at a mobile or manufactured home park in this state and retains a secured interest in said mobile and/or manufactured home shall file a notice of such lien with the recorder of deeds of the city or town within which the park is located as allowed by

the provisions of § 34–13–8 and with the uniform commercial code division of the department of secretary of state."

In this way landlords of trailer parks are afforded the convenience of checking their own town's records to see if a seller of the mobile home has recorded an interest before they act pursuant to § 34–18–50. However, Balfour was not required to follow the mandate of § 31–44–4 because it was not the seller of the mobile home.